# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA TABLE TENNIS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONAL BASKETBALL COURTS, et al.,<br><br>Defendants. | Case No. 18-cv-00319-DMR<br><br>**REQUEST FOR REASSIGNMENT; REPORT AND RECOMMENDATION DENYING MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 25 |

Plaintiffs USA Table Tennis ("USATT"), Bowmar Sports, Inc. ("Bowmar"), Meng-Yu Wang ("Wang"), and Cedar Rapids Table Tennis Club, LLC ("CRTTC") filed this case against National Basketball Courts, LLC, dba NB Courts ("NB Courts"), Joseph Nelson ("Nelson"), and Jordan Boreman ("Boreman"). [Docket No. 1 (Compl.).] Plaintiffs now move for entry of default judgment against NB Courts. [Docket No. 25 (MDJ).] The court ordered supplemental briefing on the issue of subject matter jurisdiction. [Docket No. 35.]

Not all parties have filed a declination or consent to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). Therefore, the court issues this Report and Recommendation and reassigns this case to a district judge for final disposition, with the recommendation that Plaintiffs' motion be DENIED for failure to establish the existence of diversity jurisdiction.

## I.  BACKGROUND

The four Plaintiffs comprise an organization, a limited liability corporation, an individual, and a corporation. USATT, an organization, is the "official sanctioning body for professional table tennis in the United States." Compl. ¶ 17. It is headquartered in Colorado Springs, Colorado. *Id.* Plaintiffs state that USATT has existed for almost 100 years and has a "world-class reputation" among international table tennis associations. *Id.* USATT has organized thousands of major international table tennis tournaments. *Id.* CRTCC is a USATT affiliated club and a limited liability

corporation, of which Wang is the sole member. *Id.* ¶ 4. Bowmar is an incorporated organizer and sponsor of table tennis tournaments throughout the United States. *Id.* ¶ 16.

Defendants comprise a limited liability corporation and two individuals. NB Courts is an LLC conducting business in Livermore, CA and is registered in the state of California. Compl. ¶ 6. It has a venue that it rents for various events, and primarily hosts basketball and volleyball tournaments. *Id.* ¶ 28. Nelson is an owner and member of NB Courts, and Boreman is the managing member. *Id.* ¶¶ 7-8.

In November 2016, CRTCC, through Wang, contracted with NB Courts to host the 2017 Butterfly West Coast Open Table Tennis Championships in Livermore, California on February 18 and 19, 2017. Compl. ¶ 11. CRTCC paid NB Courts a deposit of $7500, which NB Courts accepted and still retains. *Id.* ¶ 12. Over 225 entrants registered for the tournament. *Id.* The tournament was listed on NB Court's online calendar for the weekend of February 18 and 19, 2017, until it was removed sometime during the week the tournament was to occur. *Id.* at ¶ 14.

On February 16, 2017, Josh Brantley, an employee of Bowmar, flew from North Carolina to San Francisco to help set up a truckload of equipment for the tournament. Compl. ¶ 18. He went to NB Courts, the expected tournament venue, to ask questions about equipment setup. *Id.* He spoke briefly with Matt Fake, the manager of NB Courts, about parking and timing issues. *Id* at ¶¶ 18-19. They agreed that some of the equipment would be brought in later that day. *Id.* at 19. Fake did not disclose to Brantley that the venue was no longer available due to the fact that NB Courts had double-booked it for a volleyball event. *Id.*

On February 17, 2017, Brantley went to NB Courts to meet the truck driver and forklift company at approximately 10:00 a.m. Brantley spoke to Fake on the telephone, again confirming which door they would be using to bring equipment in and the time they would start unloading the equipment. Compl. ¶ 20. Around 3:15 p.m. that day, Fake sent an email to Brantley and Wang, stating, "We needed [*sic*] to discuss the weekend at 4pm." *Id.* at ¶ 21. Brantley and his assistant subsequently met with Fake and learned for the first time that the venue had been double-booked; that a volleyball event was scheduled to use the venue that weekend; and that Bowmar would not be allowed to set up for the table tennis tournament that was scheduled to start the next day. *Id.* By

2

February 17, 2017, hundreds of players from the West Coast and Asia had flown and driven to the Bay Area and had reserved hotel rooms in order to play in the table tennis tournament. *Id.* ¶ 24.

Plaintiffs allege that NB Courts knew "for at least 3-4 days, and perhaps weeks in advance," that the venue would not be available for the table tennis tournament, but "actively concealed these material facts from all Plaintiffs." Compl. ¶¶ 22-27. On January 16, 2018, Plaintiffs filed a complaint against all Defendants, alleging claims for relief based on breach of contract, fraud, negligence, and unfair business practices. Compl. ¶ 31. They seek compensatory, reputational, and punitive damages. *Id.* ¶¶ 43-46. Defendants failed to respond, and the court entered default as to NB Courts but declined default as to Nelson and Boreman. [Docket Nos. 20-21.] Plaintiffs filed a motion for default judgment against NB Courts only. The court ordered supplemental briefing, which Plaintiffs filed along with supporting declarations. [Docket Nos. 40-42.]

## II. LEGAL STANDARDS

Federal Rule of Civil Procedure 55(b)(2) permits a court to enter a final judgment in a case following a defendant's default. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 999 (N.D. Cal. 2001). Whether to enter a judgment lies within the court's discretion. *Pepsico, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) ("A defendant's default does not automatically entitle the plaintiff to a court-ordered judgment." (citing *Draper v. Coombs*, 792 F.2d 915, 924-25 (9th Cir. 1986))).

Before assessing the merits of a default judgment, a court must ensure the adequacy of service on the defendant, as well as confirm that it has subject matter jurisdiction over the case and personal jurisdiction over the parties. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). If the court finds these elements satisfied, it turns to the following factors ("the *Eitel* factors") to determine whether it should grant a default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decision on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986) (citation omitted). In this analysis, "the

1 well-pleaded allegations of the complaint relating to a defendant's liability are taken as true." *Pepsico, Inc.*, 238 F. Supp. 2d at 1175 (citing *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987)). Nevertheless, default does not compensate for essential facts not within the pleadings and those legally insufficient to prove a claim. *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

## III. ANALYSIS

Federal courts are courts of limited jurisdiction, and a "federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *Stock W., Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir. 1989) (citations omitted). A federal court may exercise either federal question jurisdiction or diversity jurisdiction. Here, Plaintiffs assert state law claims; therefore, Plaintiffs may only proceed in federal court if they establish diversity jurisdiction.

A district court has diversity jurisdiction where the parties are diverse and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs." 28 U.S.C. § 1332. Parties are diverse only when "the citizenship of each plaintiff is diverse from the citizenship of each defendant." *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 62 (1996). "[T]he congressional grant of diversity jurisdiction is to be strictly construed." *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1092 (9th Cir. 1983). "Absent unusual circumstances, a party seeking to invoke diversity jurisdiction should be able to allege affirmatively the actual citizenship of the relevant parties." *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001).

In the present case, Plaintiffs must affirmatively allege that the citizenship of each of the four Plaintiffs does not overlap with the citizenship of any of the three Defendants. This can be a more complex issue where, as here, some of the parties may have citizenship in more than one state. The court previously determined that the citizenship of the parties could not be ascertained from the complaint, and directed Plaintiffs to file supplemental briefing "establishing, with competent evidence, that the requirements of diversity jurisdiction have been met." [Docket No. 35 at 1.] The court specifically requested further briefing on the citizenship of USATT, Bowmar, Wang, and NB Courts. *Id.* at 1-2; *see also Harris v. Rand*, 682 F.3d 846, 851 (9th Cir. 2012) ("[W]here the district court has doubts about whether diversity exists, the district court may 'insist that the jurisdictional

4

facts be established or the case be dismissed, and for that purpose the court may demand that the party alleging jurisdiction justify [its] allegations by a preponderance of evidence.'") (further citations omitted).

Having reviewed Plaintiffs' supplemental briefing and declarations, the court determines that Plaintiffs have failed to allege facts sufficient to show that diversity jurisdiction exists in this case. Plaintiffs allege that Defendants are all citizens of California, but this is open to question for the reasons stated below. Even if that contention is true, Plaintiffs have not presented facts sufficient to support the allegation that no Plaintiff is a citizen of California, despite Plaintiffs having been given the opportunity to supplement the record.

### A. Citizenship of Defendants

Although Plaintiffs allege that all three Defendants—NB Courts, Boreman and Nelson—are citizens of California, Plaintiffs' submissions leave some important questions unanswered.

#### 1. Boreman and Nelson

To show state citizenship for the purposes of diversity jurisdiction, an individual "must (1) be a citizen of the United States, and (2) be domiciled in the state." *Kantor*, 704 F.2d at 1090. "A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return." *Kanter*, 265 F.3d at 857. Residency alone is not sufficient to determine citizenship. *Id.* ("A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state.").

Plaintiffs' complaint alleges that Nelson and Boreman are individuals residing in California. Compl. ¶¶ 7-8. In their supplemental briefing, Plaintiffs submitted records from the California Secretary of State showing that NB Courts is an LLC registered in California; those records list Boreman and Nelson as members of that LLC. Supp. Br., Exs. 1-2. Both individual Defendants are listed with residency addresses in Livermore, California. *Id.* The record therefore establishes that Nelson and Boreman reside in California. However, residence is not the same as domicile. Plaintiffs have not adequately demonstrated that Nelson and Boreman are domiciled in this state and permanently reside here with the intention to return. *Kanter*, 265 F.3d at 857. If either Boreman or Nelson is a citizen of a state other than California in which one or more of the Plaintiffs are also

1  citizens, diversity jurisdiction would not exist.

### 2. NB Courts

For the purposes of diversity jurisdiction, an LLC is a citizen of every state of which its owners and members are citizens. *Johnson v. Columbia Properties Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Where an entity is a citizen of more than one state, diversity jurisdiction does not exist if an opposing party is a citizen of *any* of those states. *See Bank of California Nat. Ass'n v. Twin Harbors Lumber Co.*, 465 F.2d 489, 492 (9th Cir. 1972) (finding that the pleadings did not adequately establish diversity jurisdiction where the defendant may have dual citizenship with the plaintiff's state of citizenship).

Plaintiffs submitted records from the California Secretary of State showing that NB Courts is an LLC registered in California. Supp. Br., Exs. 1-2. Because it is an LLC, NB Courts is a citizen of every state of which its owners and members are citizens. Records from the Secretary of State list Boreman and Nelson as members of that LLC, so NB Courts is a citizen of the same state(s) as Boreman and Nelson. *Id.* As explained above, Boreman and Nelson's citizenship is not adequately pleaded. Either or both may be citizens of states where Plaintiffs are citizens, which would also make NB Courts a citizen of those state(s). If NB Courts is a citizen of any state(s) in which any Plaintiffs are citizens, there is no diversity jurisdiction.

Moreover, Plaintiffs do not allege that Boreman and Nelson are the *only* members of NB Courts. This leaves open the possibility that there are other LLC members who are citizens of other states, including any of the states in which Plaintiffs are citizens. Since NB Courts would also be a citizen of those states based on the citizenship of its members, the court cannot definitively determine that NB Courts is only a citizen of California.

### B. Citizenship of Plaintiffs

Even assuming that all Defendants are citizens of California, Plaintiffs have failed to establish the citizenship of the various Plaintiffs, any of whom may also be citizens of California.

### 1. USATT

"[A] corporation is a citizen only of (1) the state where its principal place of business is located, and (2) the state in which it is incorporated." *Johnson*, 437 F.3d at 899 (citing 28 U.S.C. §

1332(c)). However, the Supreme Court has consistently refused "to extend the corporate citizenship rule to non-corporate entities, including those that share some of the characteristics of corporations." *Id.*; *Carden v. Arkoma Assocs.*, 494 U.S. 185, 197 (1990) ("We have long since decided that, having established special treatment for corporations, we will leave the rest to Congress; we adhere to that decision."). Accordingly, an unincorporated artificial entity is the citizen of every state in which its members are citizens. *Americold Realty Trust v. Conagra Foods, Inc.*, 136 S.Ct. 1012, 1015 (2016) (finding that artificial entities other than corporations are citizens of each state of which their members are citizens).

Here, Plaintiffs allege that USATT is "an organization headquartered in Colorado Springs, CO, and conducts business in all 50 States in the United States." Compl. ¶ 1, Supp. Br. ¶ 2. The complaint also states that USATT is the "official sanctioning body for professional table tennis in the United States," organizes major international table tennis tournaments, and has USATT affiliated clubs. Compl. ¶ 4, 17. Plaintiffs do not allege nor is it obvious that USATT is a corporation.

In the absence of other evidence or allegations, the court assumes that USATT is an unincorporated organization; its citizenship therefore depends on the citizenship of all its members. *Americold Realty Trust*, 136 S.Ct. at 1015 (finding that artificial entities other than corporations are citizens of each state of which its members are citizens). As explained above, if an entity is a citizen of multiple states, there is no diversity jurisdiction if an opposing party is a citizen of any of those states. *Bank of California Nat. Ass'n*, 465 F.2d at 492. To adequately plead diversity jurisdiction, Plaintiffs must allege facts sufficient to show that USATT cannot be considered a citizen of California. Here, Plaintiffs make no allegations regarding the citizenship of USATT's constituent members. The court cannot assume that USATT has no members who are citizens of California, particularly given Plaintiffs' allegation that USATT conducts business in all 50 states, has "affiliated" clubs located in states other than Colorado, and organizes international table tennis tournaments, including in California. If any of USATT's members are citizens of California, then USATT is also a citizen of California and is not diverse from Defendants.

In sum, Plaintiffs have failed to allege facts sufficient to establish USATT's citizenship and

7

that it is diverse from Defendants.

### 2. Bowmar

"[A] corporation is deemed a citizen of any state where it is incorporated *and* the state where it has its principal place of business." *Co-Efficient Energy Sys. v. CSL Indus., Inc.*, 812 F.2d 556, 557 (9th Cir. 1987) (emphasis added) (citing 28 U.S.C. § 1332(c)). In order to meet the requirements for complete diversity, Plaintiffs must allege facts sufficient to show that Bowmar is not a citizen of California.

Plaintiffs allege that Bowmar is a corporation organized under the laws of North Carolina. Compl. ¶ 2, Supp. Br. ¶ 2. Accordingly, Bowmar is a citizen of North Carolina. However, Plaintiffs make no allegation regarding Bowmar's principal place of business, even though the court specifically requested this information in its order for supplemental briefing. [Docket No. 35 at 1-2.] If Bowmar's principal place of business is in California, then Bowmar is also a citizen of California and the requirements of diversity jurisdiction have not been met.

Plaintiffs have failed to sufficiently allege that Bowmar is diverse from Defendants.

### 3. CRTCC

As discussed above, an LLC is a citizen of every state of which its owners and members are citizens. *Johnson*, 437 F.3d at 899.

Here, Plaintiffs allege that CRTCC is an LLC conducting business in the states of Iowa and California, and that Wang is the sole member of CRTTC. Compl. ¶ 4, Supp. Br. ¶ 2. Accordingly, CRTCC's citizenship is determined by the citizenship of Wang, which is addressed below.

### 4. Wang

As explained above, the citizenship of an individual is determined by domicile, which is defined as his or her "permanent home, where [he or] she resides with the intention to remain." *Kanter*, 265 F.3d at 857. Residency alone is not sufficient to determine citizenship. *Id.* ("A person residing in a given state is not necessarily domiciled there, and thus is not necessarily a citizen of that state."). In order to meet the requirements of diversity jurisdiction, Plaintiffs must allege facts sufficient to show that Wang is not a citizen of California.

Here, the complaint states that Wang is "an individual residing in the State of Kansas."

1 Compl. ¶ 3. Plaintiffs' supplemental brief contains an identical assertion. Supp. Br. ¶ 2. As residency is not identical to domicile, these assertions are insufficient to show that Wang is a citizen of Kansas. Plaintiffs' papers contain no allegations regarding Wang's domicile or citizenship. Additionally, Wang's supplemental declaration states that he "recently relocated to Northern California," but does not provide the date(s) that he relocated. [Docket No. 42 ¶ 6.] "Diversity of citizenship is determined as of the time of the filing of the complaint." *Co-Efficient Energy Sys.*, 812 F.2d at 557. Particularly given that Plaintiffs' supplemental brief states that Wang resides in Kansas, and Wang's declaration filed on the same date indicates that he has relocated to California, it is impossible to determine Wang's citizenship as of the date that the complaint was filed. Even if Wang resided in Kansas at the time the complaint was filed, his recent relocation raises the question of whether he intended to remain in Kansas at the time the complaint was filed. Accordingly, Plaintiffs have failed to establish that Wang (and by extension, CRTTC) is not a citizen of California.

In sum, Plaintiffs have not alleged facts sufficient to show that citizenship is diverse for all parties. Given that the court has already afforded Plaintiffs the opportunity to submit supplemental briefing on this issue, the court recommends dismissing the complaint for lack of subject matter jurisdiction.

## IV. CONCLUSION

For the foregoing reasons, the court recommends that Plaintiffs' motion for default judgment be denied and that the complaint be dismissed for lack of subject matter jurisdiction.

Immediately upon receipt of this order, Plaintiffs shall serve a copy of this order on Defendants and file a proof of service with the court. Any party may file objections to this report and recommendation with the District Judge within 14 days of being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(a); N.D. Civ. L.R. 72-2.

**IT IS SO ORDERED.**

Dated: June 5, 2019

_____
Donna M. Ryu
United States Magistrate Judge

9